**NOT FOR PUBLICATION**

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| THOMAS E. SULLIVAN, et al., :  | |
|     Plaintiffs,         : | CIVIL ACTION NO. 06-3945 (MLC) |
|     v.                    : | **MEMORANDUM OPINION** |
| AT&T CORPORATION,      : | |
|     Defendant.         : | |

**COOPER, District Judge**

Plaintiffs, Thomas E. Sullivan ("Sullivan") and Linda Sullivan, commenced this action on August 21, 2006, against defendant AT&T Corporation ("AT&T"), asserting claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § ("Section") 1001, et seq. (Dkt. entry no. 1, Compl.) Plaintiffs seek, inter alia, to recover post-retirement medical, dental, and life insurance benefits they allege are due to them under the AT&T Separation Plan and the AT&T Postretirement Welfare Plan (the "Plans"). (Id. at 2-3; see dkt. entry no. 21, Pl. Br. at 3.) The defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. entry no. 19.) Plaintiffs oppose the motion. (Dkt. entry no. 21.) The Court has analyzed the motion based upon the written materials and heard oral argument on March 25, 2009. The Court, for the reasons stated herein, will (1) grant the motion insofar as it concerns Count

One and Count Three, and (2) dismiss the remaining counts as being withdrawn.

## BACKGROUND

**I.   AT&T's Force Management Program ("FMP")**

To identify imbalances within the company, AT&T instituted an FMP to provide framework procedures for workforce reductions. (Dkt. entry no. 19, Def. Br. at 5.)  Through this program, AT&T designates certain individuals as "at risk" for involuntary termination.  (Id.)  Employees so designated are notified the same day, and given "scheduled off-payroll" ("SOP") dates, set at 60 days from the date of the "at risk" notification.  (Id. at 5-6.)  All employees affected by a given force reduction have identical SOP dates.  (Id.)  An employee notified of "at risk" status is generally transitioned out of active work 14 days after receiving notice.  (Id. at 11.)  In limited circumstances, if there is a compelling business need, employees are able to work past their SOP dates for a maximum period of six months.  (Id. at 12; dkt. entry no. 21, Martin Certif., Ex. A, 3-13-08 Byrne Dep. at 40.)  The SOP dates, however, do not change, regardless of an employee's actual last date of employment. (Def. Br. at 8.)

**II.  The Plans**

Employees involuntarily terminated through the FMP are eligible for certain post-retirement medical, dental, and life insurance benefits from AT&T if, inter alia, they meet certain

2

eligibility requirements set out under the post-retirement benefit-related Plans.  (Id. at 5.)  Traditionally, in order to qualify for such benefits, an employee had to meet the requirements set out under the "Rule of 75."  (Id.)  Thus, to receive benefits, an employee had to:

> (1) be at least age 65 and have Net Credited Service ["NCS"] of at least 10 years; (2) be at least age 55 and have [NCS] of at least 20 years; (3) be at least age 50 and have [NCS] of at least 25 years; or (4) be any age and have [NCS] of at least 30 years.

(Id. at 7; see dkt. entry no. 19, Feher Certif., Ex. A at 19.) NCS, for the purposes of the Rule of 75, is defined as the continuous number of years, months, and days that an employee has worked for AT&T, beginning at the employee's NCS date, and ending the date employment is terminated.  (Feher Certif., Ex. A at 19.) The date an employee commences employment is known as the NCS date.  (Id.)

   AT&T subsequently adopted an amendment, enacting the "Rule of 65," to enable an increased number of involuntarily terminated employees to be eligible for post-retirement benefits under the related Plans.  (Def. Br. at 7.)  The Rule of 65 permits employees terminated as part of a workforce reduction prior to January 1, 2006, to receive post-retirement benefits if the employee has a minimum of 5 years of service at AT&T, and the sum of his or her age and NCS equals or exceeds 23,725 days (65 years multiplied by 365 days).  (Id.)  For Rule of 65 calculations,

3

however, the terms expressly mandate that, for management employees, the employee's age and NCS must be calculated as of the SOP date, rather than the actual date of termination.  (Id. at 8; dkt. entry no. 19, Byrne Certif., Ex. B at 55-56.)

At the time an employee is notified of his or her "at risk" status, the employee is given an "Employee Communications Package," which includes a copy of the separation plan, a document detailing the eligibility requirements, and a question and answer document.  (Def. Br. at 8-9.)  The document detailing eligibility for the Rule of 65 specifically states: "[t]he Company counts every day of age and service up through your [SOP] Date (or actual termination date, if earlier)."  (Feher Certif., Ex. B at 1.)  A chart is also included in the package, comparing requirements under the Rule of 65 and the Rule of 75, stating for the Rule of 65 that "[a]ge and NCS [are] determined as of your [SOP] Date, or your actual termination, if earlier."  (Id. at 2 n.3.)  Moreover, the question and answer document explains the distinction between the SOP date and actual termination date for purposes of the eligibility requirements:

> When a[n FMP] is declared, [SOP] Dates are established.  However, for a variety of reasons the ACTUAL day the employee terminates from the AT&T payroll, the "Termination Date", may be different from the "[SOP] Date". . . . Several elements of the [the Plan] are calculated based on the [SOP] Date, although the employee may actually terminate on a different date.

(Feher Certif., Ex. C at 3.)

     The separation plan further provides:

> BECAUSE OF THE MANY DETAILED PROVISIONS OF THE PLAN, NO ONE OTHER THAN THE PLAN ADMINISTRATOR AND ITS AUTHORIZED CLAIMS ADMINISTRATORS ARE AUTHORIZED TO ADVISE YOU AS TO YOUR BENEFITS.  FOR THIS REASON AT&T CORP. CANNOT BE BOUND BY STATEMENTS MADE BY UNAUTHORIZED PERSONNEL.

(<u>Id.</u>, Ex. A at 1.)  Sharon Byrne, employed by AON Human Capital Services, to which AT&T outsourced certain human resources functions, acted as the Force Management Claims Administrator for AT&T.  (Def. Br. at 15.)  Byrne "was the primary person responsible for administering the plans at issue on behalf of the Plan Administrator."  (<u>Id.</u>)

### III. Sullivan's Employment with AT&T

     Sullivan began employment with AT&T as a project manager on March 22, 1993.  (Pl. Br. at 2.)  By 1999, Sullivan worked at the Middleton, New Jersey AT&T facility as a systems engineer. (<u>Id.</u>)  Sullivan's responsibilities primarily included working to develop, deploy, and run AT&T's operations on GeoProbe, a hardware and software package used to monitor AT&T's telephone system's performance and traffic.  (<u>Id.</u>)  By 2005, Sullivan was a Senior Technical Specialist, a management employee, working in the AT&T Global Network Technology Services Organization.  (<u>Id.</u>)  In this position, Sullivan reported to Group Manager Pamela DeFazio.  (<u>Id.</u> at 3.)

     AT&T, at this time, was in the process of transitioning its day-to-day GeoProbe systems operations to Columbus, Ohio. (Def.

Br. at 5.)  Sullivan, on March 8, 2005, was notified by DeFazio that he was "at risk" and would be involuntarily terminated. (Id. at 10; Pl. Br. at 3.)  DeFazio gave Sullivan a letter officially notifying him of his "at risk" designation, and advising that his SOP date was set for May 6, 2005.  Sullivan was also given an Employee Communications package, which he acknowledges that he read. (Def. Br. at 10-11; Martin Certif., Ex. G, 3-10-08 Sullivan Dep. at 57, 60, 64.)

   DeFazio conducted an exit interview of Sullivan on March 21, 2005.  (Def. Br. at 12.)[1]  Sullivan contends, prior to the exit interview, he told DeFazio that he was "just a few weeks short of [meeting eligibility for] benefits" under the Rule of 65. (Martin Certif., Ex. G, Sullivan Dep. at 67.)  Sullivan further contends that, on the morning of March 21, 2005, he asked DeFazio if he would collect benefits under the Rule of 65 if his SOP date was "extended," and that DeFazio stated "she saw no reason why [he] would not qualify for the Rule of 65" if his employment was extended to July 29, 2005.  (Id. at 76-78; Def. Br. at 12-13.)

---

[1] At the time of his designation as "at risk," Sullivan's exit interview was scheduled for March 21, 2005.  (Def. Br. at 12.)  DeFazio, on the morning of that date, cancelled the interview because she was "close to receiving approval for an extension of his termination date."  (Id.)  Later that day, however, DeFazio informed Sullivan that, although likely to be approved, the extension had not been finalized, and conducted the exit interview.  (Id. at 13.)

Sullivan claims that, during the interview, he again asked DeFazio whether he would qualify for benefits under the Rule of 65 if his SOP date was extended to July, and that DeFazio stated she "saw no reason why [he] wouldn't," but stated "[s]he was going to check with Peggy Van Nest," a senior associate for business administration.  (Martin Certif., Ex. G., Sullivan Dep. at 82-83; Def. Br. at 13-14.)

Sullivan discontinued his employment on the date of his exit interview, as was standard for employees designated as "at risk." (Def. Br. at 14.)  On April 15, 2005, however, Sullivan received a telephone call from DeFazio, informing him he could report back to work on April 18, 2005, to continue work on the GeoProbe project through July 29, 2005.  (Id.)  Upon his return, Sullivan contends he noticed that the pension center website had not changed his SOP date from May 6, 2005, to July 29, 2005, and asked Van Nest to look into the issue.  (Martin Certif., Ex. G, Sullivan Dep. at 115, 127-28.)  Sullivan was informed, on approximately April 25, 2005, that the pension service was not, and should not have been, informed of the new separation date because, under the Rule of 65, eligibility for benefits was determined based only upon the SOP date.  (Def. Br. at 15; Feher Certif., Ex. G.)

Sullivan continued employment with AT&T until July 29, 2005. (Def. Br. at 15.)  Sullivan contends that on May 30, 2005,

7

DeFazio approached him with the possibility of extending his employment until October 29, 2005. (Id. at 16.) Sullivan contends he was later told by DeFazio that such an extension was "not going to work out," which he admits was AT&T's "business decision." (Martin Certif., Ex. G, Sullivan Dep. at 178, 183; Def. Br. at 16.)

Sullivan was deemed not eligible for post-retirement benefits. (Def. Br. at 11.) Sullivan did not meet any of the eligibility criteria to qualify under the Rule of 75. (Id. at 11 n.4.) Moreover, under the Rule of 65, Sullivan fell short of the requisite number of days. When calculated as of his SOP date, the sum of Sullivan's age - 52 years and 179 days (19,159 days) – and his NCS – 12 years and 44 days (4,424 days) – was 70 days less than the 23,725 days required. (Id. at 11.)[2]

**IV.  Procedural History**

On approximately May 27, 2005, after notification in April that he would not qualify for post-retirement benefits, Sullivan submitted a claim for benefits to the Force Management Claims Administrator. (Feher Certif., Ex. J.) Sullivan's claim was denied in a letter dated August 23, 2005, (1) noting Sullivan was not eligible for the benefits sought, and (2) advising Sullivan

---

[2] Although Sullivan was deemed ineligible for post-retirement benefits, Sullivan did receive a separation package that included a payment of $54,306.91 and medical benefit coverage for one year. (Def. Br. at 16.)

8

of his right to appeal and the procedures for doing so.  (Id., Ex. K.)  Sullivan and his wife, a potential beneficiary if Sullivan had been eligible for the post-retirement benefits, filed suit on April 21, 2006, alleging, inter alia, "AT&T unlawfully construed [Sullivan's NCS] date in order to prevent him, and his spouse, from receiving benefits that would have been provided to him."  (Compl. at 11.)  The Complaint was dismissed without prejudice on January 30, 2007, because plaintiffs had failed to exhaust all administrative remedies.  (Dkt. entry no. 9, 1-30-07 Order.)  Sullivan subsequently filed an appeal with the AT&T Employee Benefits Committee, which was denied by letter dated June 27, 2007, and the case was reopened on July 17, 2007.  (Byrne Certif., Ex. C; see dkt. entry no. 10.)  Defendant now moves for summary judgment, arguing that Sullivan's eligibility was properly determined under the Rule of 65.  (Def. Br. at 18.)  Plaintiffs oppose the motion.  (See Pl. Br.)

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The summary judgment movant bears the initial burden of showing that there is no genuine issue of

9

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at

10

248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

**II.   Section 502 Claims**

    **A.   Applicable Standard of Review**

ERISA permits a plan participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Court should review a denial of ERISA plan benefits under a de novo standard of review unless the benefit plan gives the administrator or fiduciary of the plan discretionary authority to determine benefits eligibility or construe the plan's terms.  Metro. Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2347-48 (2008); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan confers such discretion, the Court should apply a deferential "arbitrary and capricious" standard.  Glenn, 128 S.Ct. at 2348; Post v. Hartford Ins. Co., 501 F.3d 154, 161 (3d Cir. 2007); Smathers v. Multi-Tool/Multi-Plastics Employee Health & Welfare Plan, 298 F.3d 191, 194 (3d Cir. 2002).

Case 3:06-cv-03945-MLC-TJB   Document 24   Filed 03/31/09   Page 12 of 20 PageID: 1404

Under the arbitrary and capricious standard, the plan administrator's decision will be upheld unless "it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." <u>Michaels v. Equit. Life Assur. Soc'y of U.S. Employees, Mgrs., & Agents Long-Term Disability Plan</u>, No. 07-4256, 2009 U.S. App. LEXIS 76, at *13-*14 (3d Cir. Jan. 5, 2009) (internal quotations and citations omitted); <u>Pinto v. Reliance Stand. Life Ins. Co.</u>, 214 F.3d 377, 392 (3d Cir. 2000). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 439 (3d Cir. 1997) (alteration in original) (quotations and citations omitted). Moreover, a plan administrator's decision will not be deemed to be arbitrary and capricious if it is "rational in light of [the] plan's provisions." <u>Abnathya v. Hoffman-La Roche</u>, 2 F.3d 40, 45 (3d Cir. 1993) (internal quotations and citations omitted); see <u>Gismondi v. United Techs. Corp.</u>, 408 F.3d 295, 298 (6th Cir. 2005) (stating "when it is possible to offer a reasoned explanation, based on evidence, for a particular outcome, that outcome is not arbitrary or capricious") (internal quotations and citations omitted).

12

**B.     The Standard Applied Here**

The decision that Sullivan was not entitled to post-retirement benefits under the related Plans was not arbitrary and capricious.  The record supports AT&T's decision that, under the circumstances of Sullivan's departure, Sullivan was not eligible for separation benefits under either the Rule of 75 or the Rule of 65.  As has been detailed supra, the Rule of 65 eligibility requirements were met in limited situations only - using the SOP date to calculate the employee's age and NCS.  There is no dispute that, when Sullivan's eligibility is calculated using his SOP date, he does not meet the requisite number of days to qualify for the post-retirement benefits.

Plaintiffs do not dispute that Sullivan's SOP date left him 70 days short of eligibility under the Rule of 65.  (Pl. Br. at 4.)  Plaintiffs instead argue that, regardless of the SOP date, because Sullivan was not terminated until July 29, 2005, he has met the requisite number of days to qualify for the post-retirement benefits.  (Id. at 9, 14.)

According to the express language of the Postretirement Welfare Plan, to become eligible for post-retirement benefits under the Rule of 65, the employee's age and NCS must equal or exceed 23,725 days (65 years), with a minimum of five years of service.  (Byrne Certif., Ex. B at § 2.1.1.(11)(b)).  The Plan specifically mandates that, under the Rule of 65, the employee's

age and NCS be calculated using the SOP date.  (Id.)  At the time of his SOP date, the sum of Sullivan's age and NCS totaled only 23,583 days.  Thus, under the clear terms of the Plan, Sullivan did not meet the eligibility requirements and is not eligible for post-retirement benefits.  See Hein v. F.D.I.C., 88 F.3d 210, 218 (3d Cir. 1996) ("[Plaintiff] did not satisfy the Plan requirement, and we cannot read ERISA to change the terms of the Plan and vest [plaintiff] with a benefit for which he never qualified."); Hammond v. Alcoa, No. 07-1746, 2008 WL 5135671, at *5 (W.D. Pa. Dec. 4, 2008) (upholding denial of benefits because "the terms of both [Plans at issue] are clear as to when eligibility for pension benefits is to be determined"); see also Jessup v. Alcoa, 481 F.3d 1004, 1006 (8th Cir. 2007) (finding plaintiffs not eligible for Rule of 65 benefits "under the relevant provisions of the lengthy Plan document"); Hammond v. Reynolds Metals Co., 219 Fed.Appx. 910, 914-17 (11th Cir. 2007) (finding plaintiffs not eligible for benefits under the plain language of the ERISA benefit plan); 29 U.S.C. § 1104(a)(1)(D) (requiring plans to be administered "in accordance with the documents and instruments governing the plan").

Plaintiffs contend, however, that using the Separation Plan's definition of NCS, Sullivan is eligible for post-retirement benefits.  They argue that the Separation Plan defines NCS as "the total number of months and years that an Employee has

14

been continuously employed by AT&T and/or any entity within AT&T's controlled group of corporations." (Pl. Br. at 10; see Feher Certif., Ex. A.) They further contend the Rule of 65 eligibility requirements expressly state that NCS should be calculated using "every day of age and service." (Pl. Br. at 11; see Feher Certif., Ex. B at 1.) Plaintiffs thus argue that Sullivan's eligibility should be calculated using all of the days he was employed by AT&T, from March 22, 1993, through July 29, 2005. (Pl. Br. at 11.) They contend Sullivan reached the necessary 23,725 days of employment on July 15, 2005, and "[b]ased on this simple determination" plaintiffs should now be receiving retirement benefits from AT&T. (Id.)

Plaintiffs' argument misconstrues the definition of the eligibility requirements set out under the Plans. AT&T is permitted to uniformly construe the legal definition of its eligibility requirements for specific situations as it sees fit. See Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996) (stating "ERISA [does not] mandate what kind of benefits employers must provide if they choose to have such a plan"); Shaw v. Delta Air Lines, 463 U.S. 85, 91 (1983) (same); Abnathya, 2 F.3d at 41 ("[T]he Court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.") (internal citations and quotations omitted). The Separation Plan only specifies eligibility for benefits under the Rule of 75.

15

The Postretirement Welfare Plan, defining eligibility under the Rule of 65, expressly states that the employee's age and NCS must be calculated using the SOP date. (Byrne Certif., Ex. B at § 2.1.1.(11)(b).) The supplemental documents received by Sullivan at the time he was notified of his "at risk" status also explain that, for Rule of 65, the employee's age and NCS are calculated using the SOP date. Plaintiffs, when citing the Rule of 65 eligibility requirements as using "every day and age of service," leave out the remainder of the sentence which states "up through your [SOP] Date (or actual termination date, if earlier)." (Feher Certif., Ex. B at 1.)[3] It has not been alleged that any AT&T benefits-related plan states requirements for the Rule of 65 that differ from this definition. Under the clear language of the Plans' documents, Sullivan is simply not eligible for the benefits. Cf. Jessup, 481 F.3d at 1008 (finding "though the Plan and the [summary document] used different language in defining eligibility for Rule of 65," the differing language "does not

---

[3] Plaintiffs also assert that Byrne, in her deposition, defined NCS as "[t]he date you started and then that date runs through the date you terminate." (Pl. Br. at 13.) Byrne, however, also stated that this definition is not accurate for Rule of 65 purposes. (Martin Certif., Ex. B, Byrne Dep. at 19.)

render meaningless [the summary document's] additional eligibility requirement").[4]

Plaintiffs further argue that the May 6, 2005, SOP date was arbitrary because Sullivan remained employed by AT&T past that date, and that the "arbitrary and capricious nature by which AT&T can choose the [SOP date] and then change it allows for a significant amount of inconsistencies in the way the plan is applied." (Pl. Br. at 9, 13-14.) Plaintiffs appear to contend that the arbitrary selection of an employee's SOP date, as well

---

[4] Plaintiffs appear to argue that the plan administrator's arbitrary interpretation of the eligibility requirements "thwart the definition of employee under the law." (Pl. Br. at 9.) Plaintiffs cite Vizcaino v. Microsoft Corp., which held that a plan administrator's decision that certain employees deemed to be independent contractors were ineligible for benefits was "arbitrary and capricious because [the denials] were based on legal errors which misconstrued the Plan and applied a wrong standard of determination." 120 F.3d 1006, 1013 (9th Cir. 1997) (internal quotations and citations omitted). (Pl. Br. at 11-12.) The decision of the plan administrator in that case, however, was overturned because the individuals were found to be common-law employees, rather than independent contractors, and thus eligible for benefits under the terms of the plan. Id. at 1012-13. In contrast, here, plaintiffs have submitted no evidence that the Plans' terms were misconstrued. Sullivan's eligibility was determined using the express definitions set out in the documents.
    Plaintiffs, moreover, appear to contend that Sullivan should be eligible for the benefits because, under the "employee" test set out in Nationwide Mutual Ins. Co. v. Darden, "there is no question that [Sullivan] was an employee of AT&T" from March 22, 1993, through July 29, 2005, the length of time required by the plan. 503 U.S. 318, 323 (1992). (Pl. Br. at 12-13.) This argument has no merit, however, because the dispute at issue here is not whether Sullivan was an employee of AT&T through July 29, 2005. That fact is undisputed. (See Def. Br. at 10.) The issue is whether Sullivan qualified for benefits under the terms of the Plans, which, as discussed supra, he did not.

as the six-month period in which an employee's employment can be extended beyond the SOP date, gives AT&T power to select the date after reviewing an employee's ability to obtain post-retirement benefits. (Id. at 13.) Plaintiffs, however, offer no evidence that (1) the terms of Plans were applied inconsistently, (2) any employee was deemed eligible for Rule of 65 benefits using a date other than the set SOP date, or (3) any employee was able to extend his or her employment beyond six months. Plaintiffs, moreover, do not refute that all employees given "at risk" designations in a given workforce reduction received the same SOP date, set at 60 days after the notification, giving no merit to their argument that the SOP date may be selected after reviewing employees' potential eligibility for benefits.

The Court thus finds no evidence that the plan administrator's decision was not "rational" or "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pinto, 214 F.3d at 392 (citations and quotations omitted); Abnathya, 2 F.3d at 41. Nor is there evidence that the plan failed to comply with the plan's set procedures. Michaels, 2009 U.S. App. LEXIS 76, at *3-*4. As such, the denial of post-retirement benefits to Sullivan was not arbitrary or capricious. See also Gismondi, 408 F.3d at 300 (finding no evidence to

18

substantiate plaintiffs' allegations that defendant interpreted terms of plan differently for certain employees).[5]

### III. Section 510 Retaliation Claims

Plaintiffs have withdrawn Count Two and Count Four of the Complaint, alleging retaliation. (Pl. Br. at 15.) Thus, Count Two and Count Four will be dismissed with prejudice.

### IV. State Law Claims

Plaintiffs have withdrawn Count Five of the Complaint, alleging breach of contract, and Count Six of the Complaint, alleging breach of good faith and fair dealing. (Id.) Count Five and Count Six will thus be dismissed with prejudice.

---

[5] Neither party has argued that a conflict of interest exists within the administration of the Plans. A conflict of interest may exist when an entity administering a benefits policy operates in a dual role by both determining plan eligibility and paying the claims. Glenn, 128 S.Ct. at 2348. In such a situation, the conflict should be "weighed as a factor in determining whether there is an abuse of discretion," but the standard of review does not change. Id. at 2350 (internal quotations and citations omitted); see id. at 2346 (stating "the significance of the conflict factor will depend on the circumstances of the particular case"). Given the express terms of the Plans at issue, the result here would not have changed if such a conflict had been a factor considered by the Court.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will (1) grant defendant's motion insofar as it concerns Count One and Count Three, and (2) dismiss the remaining counts as being withdrawn. The Court will issue an appropriate Order and Judgment.

                                                    s/ Mary L. Cooper
                                                  **MARY L. COOPER**
                                                  United States District Judge

Dated:    March 31, 2009